1  KAREN P. HEWITT
   United States Attorney
2  RANDY K. JONES
   Assistant U.S. Attorney
3  California State Bar No. 141711
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-5681
   randy.jones2@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          )  Criminal Case No. 08CR1604-JLS
                                       )
11              Plaintiff,             )  DATE:        June 20, 2008
                                       )  TIME:        1:30 p.m.
12      v.                             )
                                       )  UNITED STATES' RESPONSE AND
13  DANIEL CRUZ-ESCOBAR ,              )  OPPOSITION TO DEFENDANT'S
                                       )  MOTION TO:
14              Defendant.             )
                                       )  1)    DISMISS THE INDICTMENT FOR
15                                     )        FAILURE TO COMPLY WITH RULE
                                       )        5.1(c);
16                                     )  2)    SUPPRESS EVIDENCE;
                                       )  3)    DISMISS THE INDICTMENT FOR
17                                     )        FAILURE TO ALLEGE ELEMENT
                                       )        OF THE OFFENSE;
18                                     )  4)    SUPPRESS STATEMENTS;
                                       )  5)    DISMISS THE INDICTMENT DUE
19                                     )        TO    UNCONSTITUTIONAL
                                       )        STATUTE; AND
20                                     )  6)    COMPEL DISCOVERY
                                       )
21                                     )
                                       )  TOGETHER    WITH    STATEMENT    OF
22  _____   )  FACTS AND MEMORANDUM OF POINTS
                                          AND AUTHORITIES, AND GOVERNMENTS
23                                        MOTION FOR RECIPROCAL DISCOVERY

24          COMES NOW, the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

25  Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant U.S. Attorney, and hereby files

26  its Response and Opposition to defendant's above-referenced motion, along with Government's Motion

27  for Reciprocal Discovery.  Said response is based upon the files and records of the case, together with

28  the attached statement of facts and memorandum of points and authorities.

# I.

## STATEMENT OF THE CASE

On May 15, 2008, a federal grand jury returned a one-count Indictment charging Defendant Daniel Cruz-Escobar ("Cruz") with illegal alien in possession of ammunition; in violation of 18 U.S.C. § 922(g)(5).

On May 20, 2008, Cruz was arraigned on the Indictment and entered a plea of not guilty. The motion hearing is scheduled for June 20, 2008 at 1:30 p.m.

# II

## STATEMENT OF THE FACTS

A.    INCIDENT

On April 29, 2008, Border Patrol Agents from the San Diego Sector Smuggling Interdiction Group were participating in a joint southbound operation with Customs and Border Protection Inspectors assigned to the San Ysidro, California Port of Entry. The purpose of the operation was to intercept firearms, money or other contraband being transported out of the country. Agents were set up near the pedestrian turnstiles to Mexico located on the west side of the Port of Entry. Most Agents were dressed in police vests with exposed badges. Border Patrol Agents B. Desrosiers and E. Blas were dressed in plainclothes and positioned north the pedestrian walkway observing approaching individuals and their reactions to the presence of uniformed Agents conducting southbound operations.

At approximately 1:10 p.m., Agent Desrosiers saw a Hispanic male subject carrying two white bags and a child's backpack. This subject, later identified as Defendant Daniel Cruz-Escobar, was walking northbound from the west side of the Port of Entry turnaround located on Camiones Way. Agent Desrosiers observed Cruz make several head turns back towards the area of where uniformed Agents were working. Cruz walked for approximately forty yards and sat on a bench.

Agents Desrosiers continued to observe Cruz and for the next ten minutes he looked over his shoulder towards the pedestrian access to Mexico numerous times. Cruz seemed nervous and Agent Desrosiers observed him converse with an unknown male who had been also frequenting the area (not crossing and moving about). After about ten minutes, Cruz stood up and walked hesitantly towards the pedestrian crosswalk (east to west) that led to a sidewalk providing access to the pedestrian lane. After

08CR1604-JLS

1    crossing the street, Cruz walked approximately twenty yards south and made an abrupt turn back

2    towards the direction he came. Cruz did not return to the pedestrian crossing lane and instead walked

3    towards Agent Desrosiers through an area with no pedestrian sign.

4         After passing Agent Desrosiers, Cruz made several head turns and appeared to be surveying his

5    surroundings. Agent Desrosiers then saw Cruz return to the bench he was previously seated on. Within

6    minutes, Cruz stood up and walked southbound approximately forty yards where he looked towards the

7    pedestrian lanes and hesitated again. Agent Desrosiers saw Cruz speak with another unidentified male

8    that was also frequenting the area (not crossing and moving about). After speaking with second

9    unidentified man, Cruz walked back to his seat and sat down again. Cruz seemed more apprehensive

10   and very uncomfortable. Based on his observations and Agent Desrosiers' belief that Cruz' interactions

11   with the two unidentified males could involve some type of smuggling activity, Agent Desrosiers

12   notified Supervisory Border Patrol Agent David Dailey of his observations.

13        SBPA Dailey and BPA Blas approached Cruz and identified themselves in the English and

14   Spanish language. The agents questioned Cruz as to his citizenship. Cruz stated that he was a citizen

15   and national of Mexico. Agent Blas asked Cruz to show them his immigration documents. Cruz

16   presented a valid B1/B2 Border Crossing Card in his name. Agent Dailey asked Cruz where he was

17   going. Cruz stated Mexico. Agent Blas asked Cruz why he was waiting to enter Mexico. Cruz gave

18   an evasive answer and then stated that he was waiting for a friend. Agent Dailey asked what was in his

19   bags. Cruz shrugged. Agent Dailey asked to look in the bags, and Cruz agreed. The two white plastic

20   grocery bags contained two boxes of ice cream bars each. The children's backpack contained nothing.

21   Agent Dailey noticed that Cruz was becoming visibly nervous and agitated. He told Cruz to stand up

22   and put his hands against the wall for a Terry Frisk, for officer safety. Cruz immediately became stiff

23   and rigid; at that point, Agent Dailey placed Cruz in handcuffs for officer safety. A search of Cruz

24   revealed two boxes of Winchester 12 gauge ammunition in Cruz' socks, 5 per box, one box per sock.

25   Based on Cruz' statement that he was going to Mexico, and he was in possession of ammunition, he was

26   placed under arrest.

27        He was turned over to Immigration and Customs Enforcement Special Agents Jeffrey Pryor and

28   Jose Gonzalez for processing.

1    B.    POST-ARREST STATEMENTS

2    Special Agents Gonzalez and Pryor, who were also participating in the operation, were informed

3    of the incident and reported to the scene to conduct the follow-up investigation.  Special Agent Gonzalez

4    immediately advised Cruz in the Spanish language of his Miranda Rights.  Cruz stated he understood

5    his rights and was willing to answer questions without the presence of an attorney.  After a couple of

6    questions, Agents Gonzalez and Pryor escorted Cruz to the San Ysidro Port of Entry and placed him in

7    an interview room for a more throughout interview.

8    At approximately 3:10 p.m., a video-recorded statement was conducted.  Special Agent Gonzalez

9    repeated Cruz' Miranda rights in the Spanish language.  Cruz once again stated he understood his rights

10   and was willing to answer questions without a lawyer present.  Cruz then provided a detailed statement.

11   The interview terminated at approximately 4:09 p.m.

12   C.    PRELIMINARY HEARING

13   Cruz was arrested on April 29, 2008.  He made his initial appearance on May 1, 2008.  The

14   preliminary hearing was set for May 15, 2008 at 9:30 a.m.  In a telephone conversation on May 7, 2008,

15   defense counsel advised government counsel that Cruz would be willing to enter into a pre-indictment

16   guilty plea in exchange for immediate sentencing.  Government counsel informed defense counsel that

17   he would get back to him with an answer after discussing the matter with his supervisors.

18   On May 13, 2008, Government counsel received a voicemail message from defense counsel

19   informing Government counsel that defendant wanted a "no time, time served" deal, and requested

20   discovery.  Later that day, Government counsel left a voicemail with defense counsel expressing some

21   confusion over defense counsel's "no time" message.  Government counsel told defense counsel that

22   he only thought the parties were agreeing to a pre-indictment disposition with immediate sentencing.

23   There was no deal as to the sentence the government would recommend.  Government counsel asked

24   defense counsel if the defendant would agree to "waive time" so that the details of the plea agreement,

25   including any sentencing recommendations, could be ironed out.  The defense agreed to waive time.

26   On May 14, 2008, Government counsel provided the defense 49 pages of discovery and 1

27   compact disc.

28

1   On May 15, 2008, the preliminary hearing was scheduled to be held.  Prior to the hearing, the

2   parties discussed what was to happen that morning.  The defense counsel stated that his client was

3   prepared to plea to an information and "waive indictment."Government counsel stated that he thought

4   the defendant would be "waiving time" because the plea agreement was not finalized.  Defense counsel

5   also told Government counsel that his decision to have his client plead to the charge would be based on

6   which district court judge was assigned to the case.  Because of the obvious miscommunication between

7   the parties, Magistrate Judge Stormes continued the preliminary hearing until May 20, 2008.

8   In addition, to protect the Government's interest in the case, Government counsel presented the

9   matter for indictment which was returned later that day.

10  **III.**

11  **ARGUMENT**

12  A.   DISMISS INDICTMENT DUE TO PURPORTED VIOLATION OF RULE 5.1(c)

13  The Indictment should not be dismissed due to the timing of his arraignment caused by the

14  miscommunication between the parties.

15  As a matter of law, Rule 5.1was not violated in this case. Rule 5.1 requires that a magistrate

16  judge set a preliminary hearing within 10 days of a defendant's initial appearance, which is what

17  happened here.  Defendant made his initial appearance on May 1, 2008, and his preliminary hearing was

18  set for May 15, 2008, that is, on the tenth day after his initial appearance.  See Fed. R. Crim. P. 45(a)(2)

19  (directing that in computing time under the rules, Saturdays and Sundays are excluded for time periods

20  less than 11 days).

21  Even assuming a violation of Rule 5, dismissal of the indictment is not the appropriate remedy.

22  " The real 'danger' associated with post-arrest delay is the potential abuse by law enforcement to coerce

23  statements from the accused during some unwarranted detention."  United States v. Murray, 197 F.R.D.

24  at 424; see also Osunde, 638 F. Supp. at 176 ("The prevalent application of Rule 5(a) is for the

25  suppression of confessions or statements . . . .").  If there were a violation of Rule 5, the remedy would

26  be to suppress any statements that were coerced from Defendant.

27

28

08CR1604-JLS

1       B.      SUPPRESS EVIDENCE

2           Defendant contends that the stop performed by the border patrol agents on April 29, 2008

3   violated the Fourth Amendment, and any evidence obtained, including statements by the defendant and

4   the material witnesses must be suppressed. [Def. Mot. at 6.] As set forth below, his motion is meritless

5   and should be denied.

6           The Fourth Amendment allows officers to perform "brief investigatory stops of persons or

7   vehicles" when "the officer's action is supported by reasonable suspicion to believe that criminal

8   activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted); Terry v.

9   Ohio, 392 U.S. 1 (1968). "A temporary detention or seizure of a person is 'justifiable under the Fourth

10  Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.'"

11  United States v. Woods, 720 F.2d 1022, 1026 (9th Cir. 1983) quoting Florida v. Royer, 460 U.S. 491,

12  498 (1983). In forming reasonable suspicion, the officer is entitled to draw upon personal experience

13  and specialized training and to make inferences from and deductions about the cumulative information

14  available to him that "might well elude an untrained person." Arvizu, 534 U.S. at 273 (citation omitted).

15  "The process does not deal with hard certainties, but with probabilities" and "commonsense conclusions

16  about human behavior." United States v. Cortez, 449 U.S. 411, 418 (1981). Reasonable suspicion is

17  simply "a particularized and objective basis for suspecting the person stopped of criminal activity."

18  Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). It is more than a "hunch" and less

19  than "probable cause." Arvizu, 534 U.S. at 274.

20          The inquiry is whether "a police officer observes unusual conduct which leads him to reasonably

21  conclude in light of his experience that criminal activity may be afoot." United States v. $109,179 in

22  U.S. Currency, 228 F.3d 1080, 1084 (9th Cir. 2000) quoting Terry v. Ohio, 392 U.S. 1, 30 (1968). If

23  police have reasonable suspicion, a Terry stop may also be used to investigate a completed felony, not

24  just an ongoing one or in anticipation of a crime. United States v. Grigg, 498 F.3d 1070, 1074-5 (9th

25  Cir. 2007).

26          The border patrol agents had reasonable suspicion to believe that Cruz was involved in criminal

27  activity, i.e. smuggling contraband. At approximately 1:10 p.m., Cruz was seen near the pedestrian

28  walkway headed southbound into Mexico. He was carrying two white bags and a child's backpack.

He was observed making several head turns back towards the area of where uniformed agents were working. Cruz walked for approximately forty yards and sat on a bench.

Over the next ten minutes, Cruz was observed looking over his shoulder towards the pedestrian access to Mexico numerous times. Cruz seemed nervous. Cruz was also observed talking with an unknown male who had been also frequenting the area (not crossing and moving about). After about ten minutes, Cruz stood up and walked hesitantly towards the pedestrian crosswalk (east to west) that led to a sidewalk providing access to the pedestrian lane. After crossing the street, Cruz walked approximately twenty yards south and made an abrupt turn back towards the direction he came. Cruz did not return to the pedestrian crossing lane and instead walked towards Agent Desrosiers through an area with no pedestrian sign.

After passing Agent Desrosiers, Cruz made several head turns and appeared to be surveying his surroundings. Cruz returned to the bench he was previously seated on and sat down. Within minutes, Cruz stood up and walked southbound approximately forty yards where he looked towards the pedestrian lanes and hesitated again. Agent Desrosiers saw Cruz speak with another unidentified male that was also frequenting the area (not crossing and moving about). After speaking with second unidentified man, Cruz walked back to the bench and sat down again. Cruz seemed more nervous and very uncomfortable. Based on Cruz' behavior and interactions with the two unidentified males, the agents believed Cruz was involved in some type of smuggling activity. The agents conducted a Terry stop.

For all of the foregoing reasons, the Court should deny Cruz' motion to suppress for an alleged violation of the Fourth Amendment.

C.    DISMISS INDICTMENT FOR FAILURE TO ALLEGE ELEMENT OF OFFENSE

Cruz argues that the indictment should be dismissed because it fails to "charge an element of 18 U.S.C. 922(g)(5)(B), i.e. that it does not allege that Cruz "has been admitted to the United States under a nonimmigrant visa." He relies on Stirone v. United States, 361 U.S. 212 (1959), in support of the view that the failure to allege an element of the offense constitutes a jurisdictional error. See 234 F.3d at 809. In Stirone, an extortion case, the Supreme Court held that a defendant had been deprived of his right to a grand jury indictment when the government proved the interstate nexus, which was alleged in the

1    indictment to have been shipments of sand, by proving instead shipments of steel. 361 U.S. at 214-15,

2    217. The Court held that the deviation required automatic reversal and was not subject to harmless error

3    review. Id. at 217. His reliance is misplaced.

4         Stirone does not govern this case because Stirone did not label the error there "structural" and

5    Stirone was decided in an era in which constitutional error generally (even error that today would not

6    be considered structural) required per se reversal, before the Supreme Court held in Chapman v.

7    California, 386 U.S. 18 (1967), that even constitutional error is subject to harmless-error review.

8         18 U.S.C. § 922(g)(5) provides:

9    It hall be unlawful for any person -- (5) who, being an alien (A) is illegally or unlawfully
     in the United States; or (B) except as provided in subsection (y)(2), has been admitted
10   to the United States under a none-immigrant visa (as that term is defined in section
     1101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)))) ... to
11   possess, in or affecting commerce, any firearm or ammunition ...

12        The essential elements of § 922(g)(5) are:

13        1.    The defendant must knowingly possess the firearm or ammunition;

14        2.    The defendant must be illegally or unlawfully in the United States, or have been admitted

15              to the United States under a non-immigrant visa (except as provided in §922(y)(2))));

16        3.    The firearm or ammunition must have traveled in or affected commerce.

17   United States v. Shunk, 881 F. 2d 917, 921 (10th Cir. 1989); United States v. Sherbondy, 865 F.2d 996,

18   999 (9th Cir. 1988); United States v. Dancy, 861 F.2d 77, 81 (5th Cir. 1988). O'Malley, Grenig and Lee

19   § 39.09.; Manual of Model Jury Instructions for the Ninth Circuit (2002), § 8.59.

20        The Indictment reads:

21   On or about April 29, 2008, within the Southern District of California, defendant Daniel
     Cruz-Escobar, an non-immigrant alien in the United States, did knowingly and
22   unlawfully possess, in and affecting commerce, ammunition; all in violation of Title 18,
     United States Code, Sections 922(g)(5)(B) and 924(a)(2).
23
          The Indictment tracks the language of the statute and provides sufficient notice of the charge
24
     against the defendant. Cruz' motion should be denied.
25
          D.    MOTION TO SUPPRESS STATEMENTS
26
          The evidence will show that at the time of his apprehension, Cruz was properly advised of his
27
     Miranda rights. Cruz stated he understood those rights and waived them. The agent made no threats or
28

8                                           08CR1604-JLS

1 promises to induce Cruz to waive his rights. The evidence will show that the waiver was knowing and

2 voluntary, and the statements were freely and voluntarily made.

3         E.     <u>DISMISS INDICTMENT BECAUSE THE STATUTE IS UNCONSTITUTIONAL</u>

4        Cruz requests the indictment to be dismissed on the ground that the statute charged violates the

5 Second Amendment. However, Cruz failed to provide any support for this argument and suggests that

6 it is premature in light of the Supreme Court's expected ruling in District of Columbia v. Heller,

7 S.Ct.Case No. 07-290. While the Government does not concede the issue raised by the Defendant, the

8 Government does agree that the matter raised is premature.

9         F.     <u>MOTION TO COMPEL DISCOVERY</u>

10        The defendant has filed request for discovery and to preserve the evidence in this case. To

11 simplify the response, the various items sought have been broken down into the following categories:

12 (1) items to which the Government has no objection; and (2) items to which the defendant is not entitled.

13        **(1)** **Brady Material.** The Government has and will continue to perform its duty under <u>Brady</u>

14 to disclose material exculpatory information or evidence favorable to Defendant when such evidence

15 is material to guilt or punishment. The Government recognizes that its obligation under <u>Brady</u> covers

16 not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify

17 on behalf of the United States. <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States v.</u>

18 <u>Bagley</u>, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested

19 by the defense. <u>Bagley</u>, 473 U.S. at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976).

20 "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability

21 that, had the evidence been disclosed to the defense, the result of the proceeding would have been

22 different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>). The final determination

23 of materiality is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles</u>

24 <u>v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

25        <u>Brady</u> does not, however, mandate that the Government open all of its files for discovery. <u>See</u>

26 <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000)(<u>per curiam</u>). Under <u>Brady</u>, the

27 Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see</u>

28 <u>United States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from

1   other sources (<u>see</u> <u>United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

2   defendant already possesses (<u>see</u> <u>United States v. Mikaelian</u>, 168 F.3d 380-389-90 (9th Cir. 1999)

3   <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

4   Attorney could not reasonably be imputed to have knowledge or control over.  <u>See</u> <u>United States v.</u>

5   <u>Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001).

6        Brady does not require the Government "to create exculpatory evidence that does not exist,"

7   <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government

8   "supply a defendant with exculpatory information of which it is aware."  <u>United States v. Flores</u>, 540

9   F.2d 432, 438 (9th Cir. 1976).

10        **(2)  <u>Any Proposed Rule 404(b) Evidence.</u>**  The Government has already provided Defendant

11   with information regarding Defendant's known prior criminal offenses.  The Government will disclose

12   in sufficient time advance of trial, the general nature of any "other bad acts" evidence that the

13   Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b).  To the extent possible, the

14   Government will provide the Rule 404(b) evidence to Defendant within two weeks prior to trial.  The

15   Government will also provide notice of all impeachment evidence by prior criminal convictions as

16   required by Fed. R. Evid. 609.

17        **(3)  <u>Request for Preservation of Evidence.</u>**  The Constitution requires the Government to

18   preserve evidence "that might be expected to play a significant role in the suspect's defense." <u>California</u>

19   <u>v. Trombetta</u>, 467 U.S. 479, 488 (1984).  To require preservation by the Government, such evidence

20   must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2)

21   "be of such a nature that the defendant would be unable to obtain comparable evidence by other

22   reasonably available means."  <u>Id.</u> at 489; <u>see also</u> <u>Cooper v. Calderon</u>, 255 F.3d 1104, 1113-14 (9th Cir.

23   2001).

24        The United States will make every effort to preserve evidence it deems to be relevant and

25   material to this case.  Any failure to gather and preserve evidence, however, would not violate due

26   process absent bad faith by the Government that results in actual prejudice to the Defendant. <u>See</u> <u>Illinois</u>

27   <u>v. Fisher</u>, _ U.S._ , 124 S.Ct. 1200 (2004) (<u>per</u> <u>curiam</u>); <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58

28

1   (1988); <u>United States v. RIVERA-Relle</u>, 322 F.3d 670 (9th Cir. 2003); <u>Downs v. Hoyt</u>, 232 F.3d 1031,

2   1037-38 (9th Cir. 2000).

3        **(4)  <u>Defendant's Statements.</u>**  The Government recognizes its obligation under Rules

4   16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and

5   Defendant's written statements.  The Government has produced all of Defendant's statements that are

6   known to the undersigned Assistant U.S. Attorney at this date.  If the Government discovers additional

7   oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such

8   statements will be provided to Defendant.

9        The Government has no objection to the preservation of the handwritten notes taken by any of

10  the agents and officers.  <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must

11  preserve their original notes of interviews of an accused or prospective government witnesses).

12  However, the Government objects to providing Defendant with a copy of the rough notes at this time.

13  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have

14  been accurately reflected in a type-written report.  <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th

15  Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require

16  disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a

17  report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because

18  the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1)

19  comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or

20  adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough

21  notes in this case do not constitute "statements" in accordance with the Jencks Act.  <u>See</u> <u>United States</u>

22  <u>v. Ramirez</u>, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks

23  Act where notes were scattered and all the information contained in the notes was available in other

24  forms).  The notes are not <u>Brady</u> material because the notes do not present any material exculpatory

25  information, or any evidence favorable to Defendant that is material to guilt or punishment.  <u>Brown</u>, 303

26  F.3d at 595-96 (rough notes were not <u>Brady</u> material because the notes were neither favorable to the

27  defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3rd

28  Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient).  If,

1  during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks

2  Act, or <u>Brady</u>, the notes in question will be provided to Defendant.

3      **(5)  <u>Tangible Objects.</u>**  As previously discussed, the Government has complied and will

4  continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice,

5  to examine, inspect, and copy all tangible objects that is within its possession, custody, or control, and

6  that is either material to the preparation of Defendant's defense, or is intended for use by the

7  Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

8  The Government need not, however, produce rebuttal evidence in advance of trial.  <u>United States v.</u>

9  <u>Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

10      **(6)  <u>Expert Witnesses.</u>**  The Government will comply with Rule 16(a)(1)(G) and provide

11  Defendant with a written summary of any expert testimony that the Government intends to use under

12  Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  This shall

13  include the expert witnesses' qualifications, the expert witnesses opinions, and the bases and reasons

14  for those opinions.

15      **(7)  <u>Witness Addresses.</u>**  The Government will provide Defendant with the reports containing

16  the names of the agents involved in the apprehension and interviews of Defendant.  A defendant in a

17  non-capital case, however, has no right to discover the identity of prospective Government witnesses

18  prior to trial. <u>See</u> <u>Weatherford v. Bursey</u>, 429 U.S. , 545, 559 (1977); <u>United States v. Dishner</u>, 974 F.2d

19  1502, 1522 (9th Cir 1992), <u>citing</u> <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985); <u>United States</u>

20  <u>v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996).  Nevertheless, in its trial memorandum, the Government

21  will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although

22  delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir.

23  1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).

24      The Government objects to any request that the Government provide a list of every witness to

25  the crimes charged who will not be called as a Government witness.  "There is no statutory basis for

26  granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)©."

27  <u>United States v. Yung</u>, 97 F. Supp. 2d 24, 36 (D. D.C. 2000), <u>quoting</u> <u>United States v. Boffa</u>, 513 F.

28  Supp. 444, 502 (D. Del. 1980).

1

2      **(8) Jencks Act Material.**  The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government

3    witness has testified on direct examination, the Government must give the Defendant any "statement"

4    (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to

5    the subject matter to which the witness testified. 18 U.S.C. §  3500(b).  A "statement" under the Jencks

6    Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him,

7    (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement,

8    or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  While the Government is

9    only required to produce all Jencks Act material <u>after</u> the witness testifies, the Government plans to

10   provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

11     **(9) Informants and Cooperating Witnesses.**  At this time, the Government is not aware of any

12   confidential informants or cooperating witnesses involved in this case.  The Government must generally

13   disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's

14   testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957).  If there is a

15   confidential informant involved in this case, the Court may, in some circumstances, be required to

16   conduct an in-chambers inspection to determine whether disclosure of the informant's identity is

17   required under <u>Roviaro</u>.   <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).

18   If the Government determines that there is a confidential informant somehow involved in this case, the

19   Government will either disclose the identity of the informant or submit the informant's identity to the

20   Court for an in-chambers inspection.  The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u>

21   to provide material evidence that could be used to impeach Government witnesses.

22     **(10) Specific Request to View A-Files of Material Witnesses.**  As previously discussed, the

23   Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could

24   be used to impeach Government witnesses.

25     **(11) Residual Request.**  The Government will comply with all of its discovery obligations, but

26   objects to the broad and unspecified nature of Defendant's residual discovery request.

27

28

08CR1604-JLS

## G.     GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

### 1.     Rule 16(b)

The defendant has invoked Federal Rule of Criminal Procedure 16 in his motion for discovery. The Government has voluntarily complied with the requirements of Federal Rule of Criminal Procedure 16(a).  Thus, the 16(b) provision of that rule, pertinent portions of which are cited below is applicable:

The Government hereby requests the defendant permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody, or control of the defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of the defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendant intends to call as a witness.  The Government also requests that the Court make such orders as it deems necessary under Rules 16(d)(1) and (2) to insure that the Government receives the discovery to which it is entitled.

### 2.     Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except the defendant.  The new rule thus provides for the reciprocal production of <u>Jencks</u> statements.  The Government hereby requests that the defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes, and reports.

08CR1604-JLS

1

## IV.

2

### <u>CONCLUSION</u>

3

For the foregoing reasons, Defendant's motions should be denied.

4

DATED: June 19, 2008

5

Respectfully Submitted,

6

KAREN P. HEWITT
United States Attorney

7

8

s/ Randy K. Jones
RANDY K. JONES

9

Assistant United States Attorney
Attorneys for Plaintiff

10

United States of America
Email: randy.jones2@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08CR1604-JLS

1                                  UNITED STATES DISTRICT COURT

2                              SOUTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR1604-JLS |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | CERTIFICATE OF SERVICE |
| DANIEL CRUZ-ESCOBAR, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) |  |

IT IS HEREBY CERTIFIED THAT:

       I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

       I am not a party to the above-entitled action. I have caused service of **United States' Response and Opposition to Defendant's Motions Together with Statement of Facts and Memorandum of Points and Authorities, and Government's Motion for Reciprocal Discovery** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1.  Todd W. Burns, todd_burns@fd.org

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on June 19, 2008

                           s/ Randy K. Jones
                           RANDY K. JONES

                                                  08CR1604-JLS